# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

**FILED**

UNITED STATES OF AMERICA, )
)  JAN 1 4 2025
          Plaintiff, )
) BONNIE HACKLER
) Clerk, U.S. District Court
v. ) 25-CR-171-RAW
) By_____
JODY LEE HULL, ) Deputy Clerk
)
)
          Defendant. )

## OPINION & ORDER REOPENING DETENTION HEARING AND REAFFIRMING DETENTION

Before the Court is Defendant's Opposed Motion to Reopen Detention (Docket No. 57) pursuant to 18 U.S.C. § 3142(f). The Court reviewed the motion, the record, and the Court's prior detention order entered December 1, 2025. For the reasons set forth below, the motion is **GRANTED** for the limited purpose of reconsideration, and upon reconsideration, detention is **REAFFIRMED**.

    **I.**    **Procedural Background and Prior Findings**

On December 1, 2025, following a detention hearing conducted under the Bail Reform Act, the Court entered a written order detaining Defendant pending trial (Docket No. 21). In that order, the Court made express findings under all four factors set forth in 18 U.S.C. § 3142(g). Specifically, the Court found as follows:

    **I.**    **Nature and Circumstances of the Offense Charged (§ 3142(g)(1))**

Two controlled buys, both at the Defendant's own residence/place of business, tell a straightforward story. On December 13, 2024, he allegedly sold 3.528 grams of methamphetamine to a CI while wearing an audio-recorded wire. On January 8, 2025, he once again allegedly sold

12.71 grams, again recorded, again at his residence/place of employment, and again directly from his hands. Both field tests confirmed methamphetamine; both were later confirmed by lab analysis. The location matters. He was not operating from a street corner or a vehicle. He was allegedly dealing from the very space where he lives, works, and controls access. The allegations are not simply one stray lapse but two separate sales nearly a month apart, showing ongoing distribution. This factor favors detention.

## II.   Weight of the Evidence Against the Defendant (§ 3142(g)(2))

The weight of the evidence here is substantial. ATF Agent Grizzle would testify that both buys were controlled, monitored, and recorded. The CI went in clean, left with meth, and every step is preserved on audio. The methamphetamine was confirmed through DEA lab analysis. There is no evidentiary gap, no missing chain, no ambiguous witness. Even the Defendant's own statements to Pretrial Services admits methamphetamine use as recently as the day of his arrest. A Defendant who admits use, allegedly sells from his home/place of business, and is captured on audio twice leaves very little room for doubt. This factor favors detention.

## III.  History and Characteristics of the Defendant (§ 3142(g)(3))

This is where the picture becomes more complicated, because the letters submitted on his behalf paint him as a man who built a life of service: teacher; coach; business owner; and community figure. Each letter reinforces that legacy, and each carries weight. Those letters also emphasize his recent cancer diagnosis. But when viewed through the lens of § 3142(g)(3), history and characteristics are not measured solely by the brightest chapters; the law requires the entire story.

That story is long, varied, and concerning. The PTS report documents decades of alcohol-related offenses, multiple protective order violations, domestic assault and battery, cruelty to animals, drug paraphernalia arrests, possession of methamphetamine, two pending domestic cases with applications to accelerate, a pending trafficking case involving firearms and stolen property, and a separate felony larceny arrest. These are not youthful mistakes. These are offenses committed at 43, 44, 49, 51, 55, 56, and 58. Many occurred while he was on bond or under deferred sentences: an unmistakable pattern noted by Pretrial Services. His last known methamphetamine use occurred the day of his arrest for

federal drug distribution. While he claims a terminal cancer diagnosis, he provided no medical documentation whatsoever to Pretrial Services, nothing from a doctor, no records, and no verification.

The combination is telling: strong community support, but a long criminal record; deep roots, but repeated lapses; health concerns, but no proof; and ongoing criminal exposure with multiple pending state felonies set for hearing within weeks. This factor is much closer but based on the entirety of the record presented to this Court it still favors detention.

### IV. Nature and Seriousness of the Danger to Any Person or the Community (§ 3142(g)(4))

Methamphetamine distribution is inherently dangerous. But the danger analysis here is not abstract, it is grounded in this Defendant's demonstrated conduct. He allegedly sold methamphetamine from the place where he sleeps and does business. He admitted ongoing methamphetamine use. He has a prior deferred sentence for methamphetamine possession that was later accelerated because of continued criminal activity. He has two pending domestic violence cases, one involving great bodily harm and one involving cruelty to animals. He has a pending trafficking case with allegations of possessing a firearm during the commission of a felony. He also has a pending felony larceny charge. These cases were active at the very moment he engaged in the two controlled buys.

PTS identified danger concerns based on the nature of the instant offense, his history of violence, his substance abuse, his ongoing criminal activity, and the specific risks to the community. Their recommendation is unequivocal: there is no condition or combination of conditions that will reasonably assure community safety. This factor favors detention.

That prior detention order is the starting point for the present analysis. A motion to reopen detention does not erase prior findings. It requires the Court to determine whether new information exists that materially alters them.

##  II.    Legal Standard

Under 18 U.S.C. § 3142(f)(2), a detention hearing may be reopened only if the Court finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on whether conditions of release would reasonably assure the Defendant's appearance and the safety of the community. Reopening is discretionary and limited. It is not a relitigation of detention.

## III.    Reopening the Detention Hearing

Defendant moves to reopen detention based primarily on asserted deterioration of his medical condition and allegations regarding the adequacy of medical care at the county jail. The Court notes that Defendant's underlying cancer diagnosis and medical history were known at the time of the original detention hearing and were considered in the December 1, 2025 order. However, Defendant now alleges progression of that condition, worsening symptoms, and deficiencies in current conditions of confinement.

Given the seriousness of these allegations, the Court finds it appropriate to reopen the detention hearing solely for the limited purpose of reconsideration and ensuring a complete record. The motion to reopen is therefore granted to that extent.

On January 14, 2026, the Court conducted a detention hearing on Defendant's motion to reopen. Both parties proceeded by proffer. The Court's findings on reconsideration are based on the evidentiary record from the original detention hearing and the information proffered at the hearing on the motion to reopen.

## IV.  Analysis

### A.  What Has Not Changed

Several core facts and findings from the Court's December 1, 2025 detention order (Docket No. 21) remain unchanged. First, Defendant's underlying medical history was known to the Court at the time of the original detention hearing. The Court did not order detention in ignorance of Defendant's cancer diagnosis, surgical history, or ongoing medical complications.

Second, the Court's central concern regarding danger to the community has not changed. The prior detention order rested on danger, not flight, and that concern remains the focus of the Court's analysis.

Third, the Court's assessment that conditions of release would rely heavily on compliance and would not adequately mitigate danger has not changed.

### B.  What Has Changed

The Court next addresses the information that has changed since the December 1, 2025, detention order (Docket No. 21).

#### Evidentiary Posture of the Charged Offense

Since the detention hearing, the audio recordings of the alleged controlled drug buys have been suppressed due to poor quality (Docket No. 42). As a result, the government's case on the methamphetamine distribution charge now rests more heavily on testimonial credibility, particularly that of the confidential informant.

The Court expressly acknowledges that this development weakens the weight-of-the-evidence factor as compared to December 1, 2025. The Court gives that change appropriate weight.

### Medical Condition and Conditions of Confinement

Defendant now asserts progression of his medical condition and alleges inadequate access to hygiene, showers, medical evaluation, and oncology care while detained. The Court has carefully considered these allegations. They are serious and concerning, and the Court does not dismiss them.

**C.     Reconsideration Under § 3142(g)**

Having reopened the detention hearing and reconsidered the record in light of the newly presented information, the Court makes the following findings under 18 U.S.C. § 3142(g). These findings are informed by, and build upon, the Court's December 1, 2025 detention order, but reflect the current evidentiary and factual posture of the case.

   1.     **Nature and Circumstances of the Offense Charged (§ 3142(g)(1))**

The Defendant remains charged in a two-count indictment alleging distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). The indictment alleges two separate distributions occurring on December 13, 2024, and January 8, 2025, each involving a confidential informant and occurring at the Defendant's residence and/or place of business. What has changed since the original detention order is not the nature of the charged conduct, but the admissibility of certain evidence. The audio recordings of the alleged controlled buys have been

suppressed due to poor quality. As a result, the government's case no longer includes admissible recorded evidence of the transactions. What has not changed is the nature of the alleged conduct itself: two separate distributions, weeks apart, allegedly conducted from the Defendant's own residence and/or place of business. The allegations are not of a single aberrational act, but of repeated distribution from a location under the Defendant's control. Methamphetamine distribution remains an inherently dangerous offense with direct and foreseeable consequences to the community. This factor continues to weigh in favor of detention.

2. **Weight of the Evidence Against the Defendant (§ 3142(g)(2))**

This factor has materially changed since the Court's December 1, 2025 order. At the time of the original detention hearing, the government proffered that both controlled buys were audio-recorded and preserved. Those recordings are now inadmissible. As a result, the government's case on the drug charges rests more heavily on testimonial evidence, including the credibility of the confidential informant, corroborating circumstances, and physical evidence recovered from the controlled buys. The Court candidly acknowledges that suppression of the recordings weakens the weight-of-the-evidence factor as compared to the original detention analysis. The Court has also considered Defendant's argument that statements allegedly made by a law-enforcement officer during post-arrest transport support release. Detention determinations under the Bail Reform Act are committed to the Court, not to arresting officers, and are based on the full evidentiary record before the Court. Informal or preliminary opinions expressed at the time of arrest,

particularly prior to a detention hearing and prior to the development of additional information, are not dispositive under § 3142. The Court has therefore considered, but does not assign controlling weight to, those statements. However, based on the new information, this factor now weighs less strongly in favor of detention than it did at the time of the original order, and slightly favors release.

   3.   **History and Characteristics of the Defendant (§ 3142(g)(3))**

The Court has given careful and serious consideration to the Defendant's history and characteristics, including new information presented in support of reconsideration. The Court recognizes that detention under these circumstances is physically difficult and emotionally taxing, and the Court does not discount the hardship imposed. The Defendant's medical history, including a longstanding cancer diagnosis and prior surgical intervention, was known at the time of the original detention hearing. What is newly asserted is a progression of that condition and allegations that the county jail has not adequately addressed his medical and hygiene needs. The Court takes those allegations seriously and has ordered specific oversight to ensure that the Defendant's medical condition is promptly assessed and appropriately treated while detained.

However, serious illness does not eliminate risk. While the Defendant's medical condition may limit physical mobility, it does not assure compliance with court orders or materially reduce the danger relevant under the Bail Reform Act. The Defendant's broader history remains unchanged. The Pretrial Services Report documents a lengthy and escalating criminal history spanning decades, including

substance abuse offenses, domestic violence-related conduct, violations of protective orders, and repeated criminal activity while on bond or under court supervision. The Defendant admitted methamphetamine use on the day of his arrest for the instant federal charges. Multiple state felony matters remain pending. The Court further notes that Defendant's medical condition is not newly diagnosed. The record reflects that Defendant was originally diagnosed in 2015. During the intervening years, including periods when Defendant was subject to court supervision, the Defendant has continued to engage in criminal conduct, substance abuse, and violations of court-imposed conditions. While the Court does not minimize the seriousness of Defendant's current condition, the record demonstrates that the existence of the medical condition has not prevented criminal activity or ensured compliance with court orders. The Court therefore cannot conclude that Defendant's medical condition materially reduces the risk relevant under the Bail Reform Act.

The letters previously submitted on the Defendant's behalf speak to his past contributions, professional life, and community relationships. The Court does not disregard those submissions. However, § 3142(g)(3) requires the Court to assess present risk, not past reputation. When viewed as a whole, the Defendant's history reflects repeated failures to comply with the law and with court-imposed conditions, even when significant personal consequences were at stake. On balance, this factor continues to weigh in favor of detention.

4.   **Nature and Seriousness of the Danger to Any Person or the Community (§ 3142(g)(4))**

The Court has reconsidered the nature and seriousness of the danger posed by the Defendant based on the evidentiary record developed at the original detention hearing and the evidence proffered at the hearing on the motion to reopen.

The charged conduct involves the alleged distribution of methamphetamine on more than one occasion, allegedly occurring weeks apart and conducted from the defendant's residence and place of business. Drug distribution, particularly involving methamphetamine, presents an inherent danger to the community. That danger is not limited to the immediate transaction, but extends to the broader risks associated with substance abuse, recidivism, and the destabilizing effects of controlled substances on the community.

The Court's prior detention order rested on danger rather than flight, and that assessment has not changed. The Defendant's history reflects repeated criminal conduct, ongoing substance abuse, and prior failures to comply with court-imposed conditions. The Defendant admitted methamphetamine use on the day of his arrest for the instant offense, reinforcing the Court's concern that conditions of release would not sufficiently mitigate risk.

At the hearing on reconsideration, the government proffered that the Defendant's former spouse went to the confidential informant's residence and stated that "people" had been saying the confidential informant would be taken to the "woods." The government did not proffer any direct evidence tying that statement to

the Defendant. The Court does not attribute the statement to the Defendant, does not construe it as a threat made by the Defendant, and does not rely on it as evidence of intent to harm. The Court notes the proffer for completeness only and assigns it no independent weight in its danger analysis.

The Court has carefully reconsidered whether any condition or combination of conditions (including home detention, electronic monitoring, third-party custodians, or substance-related restrictions) would reasonably assure the safety of the community. The Court finds that they would not. The Defendant's demonstrated history of continued criminal conduct and substance abuse while under court supervision indicates that conditions dependent on compliance would not adequately mitigate the risk posed. Accordingly, the Court finds that the nature and seriousness of the danger to the community remain substantial and continue to weigh strongly in favor of detention.

### Overall Assessment on Reconsideration

After reconsideration, the Court finds that one factor (§ 3142(g)(2)) has weakened, and three factors (§ 3142(g)(1), (g)(3), and (g)(4)) remain substantially unchanged. Taken together, the statutory balance has not shifted toward release.

### V.     Medical Care While Detained

Where detention is otherwise warranted, concerns regarding medical care are not remedied through release. The appropriate remedy is to ensure that detention is administered in a manner consistent with constitutional standards. The Court will

therefore exercise oversight to ensure that Defendant's medical condition is promptly assessed and that appropriate care is provided while detained.

## V. Conclusion

After reopening the detention hearing and reconsidering the matter in light of both what has changed and what has not, the Court finds that the new information does not materially alter the analysis under 18 U.S.C. § 3142(g). The evidentiary posture of the charged drug offenses has shifted, and the Court has accounted for that change directly. The Court has also given careful consideration to the Defendant's medical condition and the allegations regarding his current confinement. Those matters are serious and are not disregarded. The Bail Reform Act, however, requires the Court to determine whether any condition or combination of conditions will reasonably assure the safety of the community. The nature and circumstances of the charged conduct remain serious. The Defendant's history and characteristics continue to reflect repeated criminal conduct, substance abuse, and failures to comply with court-imposed conditions. The danger identified by the Court is not dependent on physical mobility or geographic movement, but on the Defendant's demonstrated history of substance abuse, criminal conduct, and inability to comply with conditions of supervision, and it is not meaningfully mitigated by home detention, electronic monitoring, or conditions that rely on voluntary compliance.

Applying the factors set forth in § 3142(g) after reconsideration, the Court reaffirms its prior determination. No condition or combination of conditions

reasonably assures the safety of the community. Detention therefore remains warranted, and the Defendant shall remain detained pending trial.

**IT IS THEREFORE ORDERED** Defendant's Motion to Reopen Detention is GRANTED for the limited purpose of reconsideration.

**IT IS FURTHER ORDERED** that upon reconsideration, detention is REAFFIRMED. Defendant shall remain detained pending trial.

**IT IS FURTHER ORDERED** that the United States Marshals Service shall consult with the Okmulgee County Jail to determine whether Defendant's current placement is capable of meeting his medical and hygiene needs on an ongoing basis and evaluate whether transfer to a facility better equipped to address those needs is medically or administratively appropriate.

**IT IS SO ORDERED** this 14th day of January 2026.

_____
United States Magistrate Judge